No. 62.—ANDERSON RIDDLE and others, plaintiffs in error, *vs.* TEMPERANCE KELLUM and others, defendants in error.

[1.] A died and left an estate for life, in certain slaves, to his wife B, with remainder to C. B intermarried, after going into possession of the life estate, with D. B being still in life, D sold ten of the slaves, being the issue of those originally bequeathed, to E and F, and immediately afterwards, D, combining with E and F to defraud the remainder-man C, clandestinely removed these ten slaves without the limits of the State, and sold them: *Held*, that in such case, Equity would compel D, E and F, by bill *quia timet*, to give bond in a sufficient penalty, with security, for the delivery of the negroes, and their increase, to C, at the termination of the life estate, and that, altogether regardless of the solvency or insolvency of D, E and F.

In Equity, in Washington Superior Court. Decision on demurrer, by Judge HOLT, September Term, 1849.

The question, in this case, arose upon a demurrer to a bill filed by defendants in error, against the plaintiffs in error.

The bill charged, that by the last will of Jesse Jordan, certain negroes were bequeathed to his wife, Jincey Jordan, during her natural life, and at her death, remainder to the complainants; that subsequently Jincey Jordan intermarried with Anderson Riddle, who, confederating and combining with William C. Riddle and Eldridge Williamson, and intending to defeat and defraud the remainder-men, sold ten of the said negroes, being the increase, to these confederates, who, with a full knowledge of the title and the fraud, without ever taking the negroes home, by private and unfrequented ways, conveyed them to the Central Rail Road, and thus clandestinely conveyed them beyond the limits of the State ; that they there sold them for the sum of $8,000, having purchased them for the sum of $2,000.   The bill further charged, that Anderson Riddle, at the time of the sale, was in possession of a large property, independent of this property, and was unembarrassed and easy in his circumstances.   There was no allegation that the defendants were insolvent, or likely to become so, nor that they were about removing without the jurisdiction of the Court.

The prayer was, that Riddle and his confederates " be decreed to pay over to the complainants the full present value of the said slaves, or such other sum as their actual interest in the slaves may be worth ; or that they be decreed to enter into a penal bond for an adequate amount, with sufficient security, conditioned for the forthcoming of the slaves, and the issue and increase of the females, to be delivered at the death of the tenant for life, and for general relief."

To this bill, a demurrer was filed, on several grounds, two of which alone were brought up for the decision of this Court.

1st. That the bill did not make such a case as would authorize the interposition of a Court of Equity.

2d. That the complainants had an adequate Common Law remedy.

The Court below overruled the demurrer, and defendants excepted.

James Thomas, for plaintiff in error, cited—

1 *Cowen's Justice*, 310.   11 *John.* 136.   1 *Hen.* & *Mun.* 685.

*Law of Slavery*, 190.    2 *Day*, 52.    7 *Ga. Rep.* 209.    2 *Story's Eq.* §§845, 845 *a.* 604.

JENKINS, for defendant, cited—

2 *Story's Eq.* §§843, '4, '5.    *Chit. Pl.* 151, 139, 142, '3.    3 *Peters' Rep.* 210.    1 *Story*, §184.    4 *Ga. Rep.* 404.    4 *John. Ch.* 609.

*By the Court.*—NISBET, J. delivering the opinion.

If this proceeding be considered as instituted under the Act of 1830, it cannot be sustained.    That Act relates to bills of *ne exeat*, and contemplates a remedy, in Chancery, for remainder-men and reversioners by that kind of bill.    The Act of 1830 refers to cases where the tenant for life, being in possession or control of the property, apprehensions are entertained by the person in remainder, that it will be removed beyond the jurisdiction of the State, and that his rights therein will be impaired.    In such cases, by that Act, upon making affidavit of such apprehensions, and of the value of the property, and of his right to it, the remainder-man is entitled to the writ of *ne exeat;* and Chancery will interpose with a preventive remedy, and restrain the tenant for life from removing the property beyond the limits of the State, or require bond and security that it shall be subject and accessible to the demand of the complainant.

[1.] This bill, by its averments, shows that the property is not in the possession or control of the tenant for life, and the requisite affidavits do not accompany it.    But it is not a bill seeking the benefits of the Act of 1830—it does not make the case contemplated by that Statute.    It goes upon a different ground of Equity —it makes a case independent of it—a case which will authorize the relief prayed for, on principles somewhat analogous to, but independent of those embodied in the Act of 1830.    It goes upon principles, *quia timet*—it is a bill in its strongest phase, *quia timet*. The *ne exeat* is, in England, a prerogative writ—it is here a writ of right, and issues to restrain the defendant from departing the jurisdiction, or to require him to secure to the plaintiff his demand—it is in the nature of equitable bail—it is predicated upon the fear or apprehension that the debtor will remove out of the jurisdiction.    Our Statute, as I have stated, gives to persons in

Riddle and others *vs.* Kellum and others.

remainder the benefit of this writ. *Beames on Ne Exeat, p.* 1.    1 *Black. Comm.* 137, 266.    *Story's Equity Jurisp.* §§1465, 1466, '7, '8, '9.    1 *Johns. Ch. R.* 1.    *Prince,* 469.

Bills *quia timet* are more extensively remedial than bills *ne exeat.*    The latter are founded upon apprehensions of removal with the property, beyond the jurisdiction; whereas, the former are founded upon the waste, loss, deterioration or injury to personal property, in the hands of the party entitled to the present possession, or the *danger* of such waste, loss, deterioration or injury.    Mr. *Story* says, " In all cases of this sort, where there is a future right of enjoyment of personal property, Courts of Equity will now interpose and grant relief upon a bill *quia timet,* where there is any danger of loss, or deterioration, or injury to it, in the hands of the party who is entitled to the present possession." *Story's Equity,* §845.

Where a specific legacy is given to one for life, and after his death, to another, the legatee in remainder is entitled to come into a Court of Equity, by *quia timet,* and have a decree for security from the tenant for life, for the due delivery over of the legacy to the remainder-man, upon *allegation and proof of waste, or of danger of waste of the property. Story's Equity,* §604.    *Maddox's Ch. Pr.* 178, 179.    1 *Ch. R.* 110.    2 *Freem. R.* 206.    1 *Bro. Ch. R.* 279.    3 *P. Williams,* 335, '6.    *Covenhoven vs. Shuler,* 2 *Paige's R.* 122, 132.

The case made in this bill, falls under this rule.    What is it? The bill alleges that Jordan, the testator, left certain negroes to his wife for life, with remainder to the complainants; that the tenant for life went into possession, and then intermarried with the defendant, Riddle ; that Riddle sold ten of the negroes, being issue of the slaves bequeathed, to his son and one Williamson, for $2,000 ; that these negroes are worth $8,000 ; that Riddle, Jr. and Williamson bought with knowledge of the complainant's title in remainder ; that immediately upon this sale, the tenant for life, Riddle, confederating with the purchasers, Riddle, Jr. and Williamson, to defraud the complainants, and to defeat their title in remainder, clandestinely *removed the negroes out of the State to parts unknown, and sold them for the sum of* $8,000.    The prayer is, that Riddle and his confederates be decreed to pay over to the complainants the full present value of the slaves, or such other sum as their actual interest in them may be worth ; or that they

be decreed to enter into a penal bond, for an adequate amount, with sufficient security, conditioned for the forthcoming of the slaves, and the issue and increase of the females, to be delivered at the death of the tenant for life—and for general relief. It is a case of the clearest equity, and demands the prompt interposition of the Equity powers of the Court. The fraud, as alleged, would give the Court jurisdiction. Unquestionably, coupled with that, the appropriation and removal out of the State, and actual sale of the entire property, life interest and remainder, will give jurisdiction. This is an *actual waste* of the estate—a destruction of the plaintiffs' remainder interest, for they are not to be presumed capable of finding these slaves at the expiration of the life estate, and successfully establishing their title in any one of all the foreign jurisdictions of the whole world, where they may chance then to be. And if they could, shall they be driven to that resort? Their right is, that the property remain within the jurisdiction, to await their title. If there is *danger* that it will not remain—will not be forthcoming to respond to their just demand, at the death of the tenant for life—they are entitled to the relief sought. And shall it be said, that when the waste has actually occurred—when the apprehension becomes reality—when the property has been fraudulently eloigned and sold, and the tenant for life still in life, that the relief shall not be granted? If, in the former case, the Court has jurisdiction, for stronger reason, it has jurisdiction in the latter case. It does not depend upon the solvency or insolvency of the tenant for life, and his confederates. The remaindermen are entitled to be placed in that condition of security, which they would be in, if the property were within the jurisdiction. That the property remain to answer the title in remainder, irrespective of any other fact, is the right of the legatees in remainder. If that is violated, irrespective of any other thing, they are entitled to an equivalent security, by bond. So, we are very clear, that the Court below did not err in overruling the demurrer on the second ground taken in it.

But it is insisted that the Court ought to have sustained the demurrer on the first ground, to wit: that the plaintiffs in the bill have an adequate remedy at Law, and therefore, Chancery has no jurisdiction. From what has been already said, it is plain that they cannot have an ample remedy at Law. Although the title in remainder vests with the estate for life, yet the enjoyment and

possession of the property is postponed until the expiration of the life estate. The tenant for life is entitled to its use. She has an interest in it, which continues during her life. Now, we are not prepared to say, that in this case, an action in the case would not lie at once in favor of the complainants against these defendants, for their violation of the complainants' right of property in these slaves. Admit that it does, it is not an *adequate* remedy. What, in such a case, would be the criterion of damages? The value of the estate in remainder. The title in remainder gives to the complainants, at the termination of the life estate, the slaves and their issue. To determine the value of the estate in remainder, it would become necessary to ascertain the value of the property, at the death of the tenant for life. How could this be done by proof? The duration of the life estate is uncertain—the increase of the property is uncertain—the amount of its diminution, by death, and its value in the market at the death of tenant for life, uncertain. Any value to be now put upon the estate in remainder, by proof, would be either arbitrary or conjectural. The consequence is, that a recovery might be unjust to the complainants, being too small, or to the defendants, being too large. Again, how would it be possible to apportion, at Law, the interest of the tenant for life, being entitled to the use of the property during her life, and the interest of the remainder-men, being entitled to it, in fee at her death? The thing would be impossible. An action at Law, now, would be an inadequate remedy.

But it is said, that at the expiration of the life estate, the complainants would be entitled to recover the value of the estate, in an action at Law, and therefore, Chancery has no jurisdiction. I apprehend there is no doubt about the truth of the first part of this proposition; but the remedy at Law to oust the jurisdiction of Chancery, must not only be complete, but it must be prompt —it must be available *now*. The complainants are not to be told, that because they may have an ample remedy at some future day, they are now to be denied the relief which their case demands. They are not to be put upon the hazards (of insolvency of the defendants, for example,) to which their postponement would be incident. This doctrine would annul all the law of *quia timet* to be found in the books. To this point, see the case of *James Boyce's Executors, appellants, vs. Felix Grundy, appellee, 3 Peters, 210.*

So, we think the demurrer cannot be sustained upon either

ground, and that the complainants are entitled to the penal bond, as prayed for.

Let the judgment of the Court below be affirmed.