## ADAMS <em>v.</em> THE STATE.

The accused did not, in the trial court, make a showing entitling him to a continuance; nor did he, in this court, present any better showing touching the propriety of setting aside the verdict of the jury.

Submitted February 16, — Decided March 13, 1903.

Indictment for murder. Before Judge Littlejohn. Sumter superior court. December 26, 1902.

<em>T. F. Callaway, Allen Fort Jr.</em>, and <em>James Taylor</em>, for plaintiff in error. <em>John C. Hart, attorney-general</em>, and <em>F. A. Hooper, solicitor-general</em>, contra.

SIMMONS, C. J. The plaintiff in error, Monroe Adams, was indicted for and convicted of the murder of his daughter. That he shot and killed her was admitted at the trial. From his statement it appears that he also killed his wife, though, he insisted, his in-

tention was to kill another woman and her husband, at whose house his daughter was staying. His grievance against them was that they had allowed his daughter to meet at their house a man whose attentions to her met with his disapproval; and, according to his version, he shot at them in a spirit of revenge, being "crushed down" with grief because of an undue intimacy between his daughter and this man, and being "mad, crazy mad, and plum crazy." There was, on the other hand, evidence introduced in behalf of the State which tended very strongly to show that the accused had quarreled with his daughter, become angry with her, and killed her in a fit of passion. In no view of the case, therefore, can it be said that the verdict of the jury was unwarranted.

Before entering upon the trial, counsel for the accused stated to the court that they desired, but had not been able to procure, the presence of his mother and sister, who were understood to be in Birmingham, Alabama. In this connection, counsel further informed the court that they had, after having a talk with the accused, "determined that his mother would be an important witness in this case, and also his sister, besides being of assistance," counsel thought, "in conducting the case on his trial." No formal motion either to postpone the trial or to grant a continuance appears, however, to have been made. Nor did counsel undertake to advise the court as to what the accused expected to be able to prove by his mother or by his sister, if granted an opportunity to have them present in the capacity of witnesses. This being so, we are not prepared to hold there is any merit in his contention that "the court erred in ruling the case to trial."

In one of the grounds of the motion for a new trial, filed by the accused, it is charged that "the court erred by admitting the illegal testimony of E. L. Bell, sheriff," as to the circumstances under which the accused made to him a statement in the nature of a confession; but this ground can not properly be considered by us, since the trial judge declined to verify it, for the reason set forth in an explanatory note reading as follows: "The evidence set forth in this ground is that offered before the court, out of the presence of the jury, and for the purpose of determining whether the evidence on this subject should be admitted." In another ground of the motion complaint is made of the admission of certain testimony therein set forth; but, on the argument of the case before this court, this

ground was abandoned, as it should have been, the grievance therein stated being obviously without merit, in view of another explanatory note by the presiding judge.   Counsel did insist upon still another ground of the motion, in which error was assigned upon the refusal of the court to give in charge to the jury a written request touching the law as to delusional insanity.   Counsel contended that this request to charge was pertinent and appropriate, because the accused in his statement said that " at the time the act was committed, he was mad, crazy mad, and plum crazy."   This position on their part must have been a surprise to their client, for in his statement he made no pretense of having been insane, or having acted under any delusion of any kind, but, on the contrary, asserted that he attempted to carry out, in a spirit of revenge, a deliberate intention to kill the man and woman who had harbored his daughter, also the man whose attentions to her had become distasteful to the accused.

*Judgment affirmed.   By five Justices.*