## HENDERSON *v.* THE STATE.

123  739.
125  777
126  397
j126  398
e126  399

123  739
129  358
e129  359

1. Where an assignment of error depends on a recital of facts, and it appears from a note of the presiding judge and also from another part of the bill of exceptions that such recital is substantially incorrect, such assignment will be disregarded.

2. In any case where the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, he is not bound to make a motion for a new trial or file a brief of the evidence, but may present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling, order, decision, or charge complained of. But this rule does not authorize the segregation and bringing to this court, by direct bill of exceptions, of every alleged error committed in the course of a trial. It only authorizes this to be done by such direct and brief form of bill of exceptions in cases where the judgment, decree, or verdict has necessarily been controlled by such rulings, orders, decisions, or charges; and this must be made to appear. Except in such instances, the case should be brought up in the usual form, in order that this court may view the rulings complained of in the light of their context and surroundings.

COBB, J., dissenting.    1. The assignment of error with which the majority of the court declines to deal would have been authorized according to the established common-law practice in courts which had jurisdiction to review decisions of other courts upon writs of error.

2. The common-law practice in such cases was recognized in this State by a line of physical precedents, unquestioned by the bar and uncriticised by the bench, from the time the Supreme Court was established in 1846 until 1898.

3. The act of 1898 (Van Epps's Code Supp. § 6241) was held, in *Taylor* v. *Reese*, 108 *Ga.* 379, to be merely declaratory of the existing common-law practice.

4. The assignment of error is in accordance with the ruling of the majority in *Cawthon* v. *State*, 119 *Ga*. 395. No sufficient reason appears why that decision should not be followed.

5. I concur in the ruling made in the first headnote.

6. I dissent so far as the refusal to consider the other assignment of error is concerned.

Argued June 19,— Decided August 4, 1905.

Indictment for simple larceny. Before Judge Littlejohn. Webster superior court. April 5, 1905.

Homer Henderson was indicted for simple larceny. When the case was called for trial a practicing attorney stated to the court that he wished his name to be marked for the State to assist the solicitor-general, as he had been employed by the prosecutor. Defendant's counsel objected to the appearance of the attorney on behalf of the State, claiming that he had disqualified himself from appearing for the State, by reason of certain communications and negotiations which had passed between him and the defendant in regard to his representing the latter. The court overruled the objection, and the defendant assigned error on the ruling. The only other assignment of error is in the following words: "The following is a copy of the indictment, from which it will appear that the defendant was not arraigned and that he was not furnished a copy of the indictment, or a list of the witnesses sworn before the grand jury against him, nor did he waive the latter; to all of which defendant then and there excepted and now assigns the same as error. Defendant insists that he should have been furnished with a copy of the bill of indictment, and should have been allowed to plead guilty or not guilty." The presiding judge added to this statement the following note: "Defendant's counsel was asked by the solicitor-general if he would waive arraignment and plead not guilty and sign the waiver. Defendant's counsel replied he would; and it was not known to the court that defendant's counsel did not sign the waiver of copy indictment and list of witnesses, as the matter was never again mentioned." The copy of the indictment contained in the bill of exceptions shows that there was on it the following entry: "The defendant Homer Henderson waives being arraigned and pleads not guilty," signed "F. A. Hooper, solicitor-general." There was also on the indictment an entry of the waiver of the copy of the bill of indictment and list of witnesses sworn before the grand jury. This was not signed.

*Payton & Hay*, for plaintiff in error.

*F. A. Hooper, solicitor-general,* contra.

LUMPKIN, J. (After stating the facts.) 1. The assignment of error to the effect that the indictment showed that there was no arraignment, and that the defendant was not furnished with a copy of the indictment and list of witnesses, and did not waive this, can not be considered. The assignment of error refers to the indictment for verification, but an examination of it shows that an entry was made by the solicitor-general of a waiver of arraignment by the defendant and the entering of a plea of not guilty. The presiding judge also adds a note in which he negatives the claim that there was no waiver of the copy of indictment and list of witnesses, and shows that the defendant was not in any way cut off from the right to plead, but on the contrary agreed, through his counsel, to plead not guilty and waive the copy of the indictment and list of witnesses. The assignment is not verified, but rather negatived. See *McBride* v. *Beckwith*, 67 *Ga.* 764; *Fletcher* v. *Collins*, 111 *Ga.* 253; *Brice* v. *State*, 117 *Ga.* 466; *Adams* v. *State*, 117 *Ga.* 302. As to waiving arraignment see *Hudson* v. *State*, 117 *Ga.* 704.

2. In the case at bar it is not necessary to decide whether or not, under the evidence, the relation of the attorney to the defendant was such as to preclude him from appearing for the prosecution; or whether, under the circumstances, the court erred in allowing such appearance. No motion for a new trial was made; nor was the evidence introduced on the merits of the case brought up in the bill of exceptions; nor was any exception taken to any final judgment. Under these facts, we are unable to hold that the ruling of the court requires a new trial, whether it was correct or erroneous. In *Brown* v. *Atlanta*, 66 *Ga.* 76, it was said: "When a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party." In *Smith* v. *Smith*, 112 *Ga.* 351, it was said: "When there is no motion for a new trial, an erroneous or inapt charge to the jury, which did not necessarily control their verdict against the plaintiff in error, will not be treated by this court as affording cause for reversing the judgment of the court below." In *Ocean Steamship*

*Co.* v. *Hamilton,* 112 *Ga.* 901, it was said: "A party dissatisfied with a verdict can not, without filing a motion for a new trial, properly bring to this court for review any 'ruling, order, decision, or charge' of the court below, which did not, either singly or in connection with another or others, necessarily control the finding against the plaintiff in errror." In *Ray* v. *Morgan,* 112 *Ga.* 923, it was said: "As there was no motion for a new trial, and it plainly appears that none of the charges excepted to necessarily controlled the verdict against the plaintiff in error, these charges, even if for any reason inapplicable or erroneous, afford no cause for reversing the judgment of the court below." In *Darien Bank* v. *Clarke Lumber Co.,* 112 *Ga.* 947, 951, the same ruling was made. In *Cable Co.* v. *Parantha,* 118 *Ga.* 913, it was said: "The charges of the court complained of by direct exceptions in this case, when considered in connection with the entire charge, the evidence, and the verdict rendered, do not appear to have been necessarily controlling." See also *Price* v. *High,* 108 *Ga.* 145; *Johnson* v. *Willingham,* 110 *Ga.* 307; *Benton* v. *Singleton,* 114 *Ga.* 548; *Parker* v. *Medlock,* 117 *Ga.* 813.

In *Cawthon* v. *State,* 119 *Ga.* 395, the practice in regard to carrying cases to the Supreme Court by direct bills of exceptions was discussed. The majority of the Justices, as the court was then constituted, thought that the exceptions made in that case were reviewable by direct bill of exceptions. Fish, P. J., and Candler, J., dissented. The positions of the majority are learnedly and forcibly set out in the opinion of Mr. Justice Cobb. The positions of the minority are clearly stated by Mr. Presiding Justice Fish in a headnote and Mr. Justice Candler in an opinion. A few suggestions will suffice to show some of the reasons which incline the writer to the view then entertained by a minority of the Justices, and convince him that the ruling excepted to in the present case can not be cause for reversal in the absence of a motion for a new trial or the bringing before this court of the evidence in the case. In the first place, the decisions already cited are directly in point, and at least two of them (*Smith* v. *Smith,* 112 *Ga.* 351, and *Cable Co.* v. *Parantha,* 118 *Ga.* 913) were concurred in by a full bench of six Justices, and have never been overruled or modified. It was said by Mr. Justice Cobb, in the *Cawthon* case, that if anything said or ruled in the two cases last

named was in conflict with *Taylor* v. *Reese*, 108 *Ga.* 379, the later decisions must yield to the earlier ruling. I do not think that there is any essential conflict. In *Taylor* v. *Reese* an application for mandamus was made, to compel the presiding judge to certify a bill of exceptions, which he had refused to do on the ground that, in the absence of a motion for a new trial, he had no authority to do so. It appeared that the presiding judge cut the defendant off from the contention that, if any offense was committed at all, it was not murder, but a lower grade of homicide. An examination of the bills of exceptions (two cases being heard together) will show that the evidence was brought before this court, and that exceptions were taken to certain rulings which entirely excluded a substantial part of the defense, and thus controlled the case to the extent of preventing the jury from considering the question of whether the homicide was manslaughter or not, which was the only real issue, the killing not being denied. The mandamus was granted. It was said that the court would not consider the merits of the questions presented, or whether there was in fact reversible error, on the application for mandamus. Lumpkin, P. J., who wrote the opinion, said: "Such a practice would not only be anomalous, but, as a result thereof, it would frequently happen that cases of the utmost importance would, for all practical purposes, be finally determined before they reached this court in the manner prescribed by law, and that, too, without even notice to parties vitally interested." The report of the cases when heard on their merits (*Taylor* v. *State*, 108 *Ga.* 384) will show how entirely different were the bills of exceptions then under consideration from that now before the court. In the opinion it was said: "In view of Taylor's admission on the trial that he did the killing, and of the fact that he did not ask for a verdict of not guilty but only that his offense be graded, the refusal of the judge to charge upon the law of either voluntary or involuntary manslaughter was, under the circumstances, equivalent to an adjudication from the bench that Taylor was guilty of murder, and the charge given amounted to an instruction to the jury to convict him of that offense." The same Justice who prepared the opinions in the cases of *Taylor* v. *Reese* and *Taylor* v. *State*, also wrote the opinion in *Smith* v. *Smith*, supra. In the course of the latter opinion he used the following language: "It is in this connec-

tion to be noted that no motion for a new trial was filed in the court below, but that the defendants by a direct bill of exceptions complain of rulings made during the progress of the trial. While the act of December 20, 1898, expressly authorizes such a practice, it in terms provides that such rulings only as necessarily controlled the verdict or judgment rendered can in this manner be properly brought under review in this court." And in support of this statement he cited Acts of 1898, p. 92, and *Taylor* v. *Reese,* 108 *Ga.* 379. Evidently the court did not think the two adjudications were in conflict.

The mere fact that an examination of the records of this court will show a number of instances in which cases were thus brought up for review, and in which no point was made or decided in reference to the method of exception, is of little force. I venture the assertion that a careful scrutiny would discover hundreds of records in which there were defects or lack of technical accuracy, but where no question was made or decided on the subject. A single illustration will suffice. In the case of *Allen* v. *Allen,* 63 *Ga.* 732, a demurrer was overruled, and after verdict a motion for a new trial was made, one of the grounds of which alleged error in the overruling of the demurrer. No objection was raised to this mode of procedure, and the judgment was reversed because the demurrer should have been sustained. The learned Chief Justice mentions in the opinion that the overruling of the demurrer was made a ground of the motion for a new trial. This is what is sometimes called a "physical precedent," and yet it has been held that the overruling of a demurrer does not furnish a proper ground of a motion for a new trial, but that a bill of exceptions pendente lite or a direct bill of exceptions should be filed thereto. *Griffin* v. *Justices,* 17 *Ga.* 96; *S., F. & W. Ry. Co.* v. *Renfroe,* 115 *Ga.* 774. In very truth the expression "physical precedent" merely indicates that a thing has been done, but not that it has been decided to have been rightly done. Of course this is said with entire respect for the great judges who have presided on this bench and the many great lawyers who have practiced at this bar.

Prior to the Code of 1895 the provisions for excepting in civil and criminal cases were included in the same section of the code. It declared that "either party in any civil case, and the defendant in any criminal proceeding in the superior courts of this State,

may except to any sentence, judgment, decision, or decree of such court, or of the judge thereof, in any matter heard at chambers," etc. Code of 1863, § 4160; Code of 1882, § 4251. In the Code of 1895 the same provision is made in Civil Code, § 5527; and in the Penal Code it is also inserted, omitting the words, "either party in any civil case, and," and the word "decree." Penal Code, § 1070. Decisions on this point in civil cases are therefore applicable also in criminal cases. Under that broad statement it was nevertheless considered necessary that there should have been some ruling or decision of a vital or controlling character, in order to furnish ground for direct exception. Thus, in *Miller* v. *Speight*, 61 *Ga.* 460, it was said: "When the court has erroneously ruled out evidence without which the plaintiff could not possibly recover, his failure to go on and prove other essential facts will not cure the error and sanctify a judgment of nonsuit." And this was reaffirmed in *Vaughn* v. *Burton*, 113 *Ga.* 103 (3). Even under the language of the act of 1845 (see 1 *Ga.* VII, VIII, sec. 4) there must have been a decision, sentence, judgment, or decree, which quoad the subject-matter of it must not have been inchoate or interlocutory, but final. In some cases the judgment might have been interlocutory as to the cause, as orders to dissolve injunctions and upon motions for new trials. As said by Nisbet, J. (13 *Ga.* 508), "We are not willing to entertain a writ of error where no result follows our judgment beneficial to either party." For decisions prior to the Code of 1863 see *Carter* v. *Buchanan*, 2 *Ga.* 337; *Jones* v. *Dougherty*, 11 *Ga.* 305; *Van Ness* v. *Cheeseborough*, 11 *Ga.* 377; *Evans* v. *Adams*, 12 *Ga.* 44; *Johns* v. *Fuller*, 13 *Ga.* 507. In the Code of 1863, § 4250, it was declared that "No cause shall be carried to the Supreme Court upon any bill of exceptions so long as the same is pending in the court below, unless the decision or judgment complained of, if it had been rendered as claimed by the plaintiff in error, would have been a final disposition of the cause." Exceptions pendente lite could be filed to rulings pending the cause, and upon exception to the Supreme Court, after final judgment, error could be assigned thereon, "and a new trial may be allowed thereon when it is manifest that such an erroneous decision of the court has or may have affected the final result of the case." This was carried forward in the Code of 1882, and, with a slight

amendment, in the Code of 1895.    Code of 1882, § 4250; Civil Code, § 5526; Acts 1890–1, p. 82.    Decisions since the Code of 1882 have been cited above.    See also *Harrell* v. *Tift,* 70 *Ga.* 730, and dissenting opinions' in *Cawthon* v. *State,* 119 *Ga.* 395, supra, and cit.

In 1898 an act was passed with the following caption:  " An act to dispense with a motion for a new trial and filing brief of the evidence, and to authorize a direct bill of exceptions, in certain cases."    The act declares, that, " In any case now or hereafter brought, where the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, it shall not be necessary to make a motion for a new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling, order, decision, or charge complained of." Acts 1898, p. 92.    An inspection of this act seems to indicate that its language is stronger than that previously employed in the code.    It distinctly declares that exception may thus be taken " where the judgment, decree, or verdict has necessarily been controlled by one or more rulings," etc.    Moreover the language used in the caption, where the act is described as one to " dispense with a motion for a new trial and filing brief of the evidence, and to authorize a direct bill of exceptions, in certain cases," might well be urged as indicating that in the mind of the legislature it was necessary to dispense with something which could not previously be dispensed with, and to authorize something which needed authorization; and that the dispensing and the authorizing were applicable only in certain cases of the character described in the act.    What the decision in *Taylor* v. *Reese* was has been referred to above.    If a sentence in the opinion is to be treated as a decision that this act was merely a declaration of the law as it already existed, on its face it appears to be a very plain declaration.    The only difficulty arises in its practical application, in determining what rulings, orders, decisions, or charges are such as fall within its descriptive terms as necessarily

controlling the judgment, decree, or verdict. In some cases it is clear and easily determined. In others a decision of the question is attended with more difficulty. Thus (if the act be treated as declaratory) before 1898 it was held that the direction of a verdict or the grant of a nonsuit was such a ruling. *Haskins* v. *Throne*, 101 *Ga.* 126. If the striking of a plea cut off a legal and valid defense which constituted the real merit of the defendant's contention, whereby a verdict for the plaintiff resulted, this was held to be a controlling ruling. *Haskins* v. *Bank*, 100 *Ga.* 216. In *Wright* v. *Hollywood Cemetery Co.*, 112 *Ga.* 844 (decided in 1900), it was said: "When upon the hearing of a demurrer to a petition the court passed an order in effect striking a portion thereof and limiting the plaintiffs' right of recovery to specified items, their right to except to such order was not lost because they consented to so much of a verdict which the court directed in their favor as related to the amount they were entitled to recover upon such items." In the case of *Taylor* v. *Reese*, as already noted, the charge excluded from the jury the real ground of defense. These instances are merely illustrative. Generally, although errors in practice, or in the admission or rejection of evidence, or in similar rulings pending the trial, may have been made, yet if they do not necessarily control the result, but merely go in to partly make up the aggregate of the case, upon the whole of which a verdict or judgment is reached, they can not be selected and made the subject of direct exception and assignment of error requiring a reversal. This is especially true in the absence of the evidence introduced on the trial. Rulings on evidence may possibly be of a controlling character. Thus, if suit be brought based on a note, and the note be ruled out of evidence; or on a deed, and it be rejected, so that the case is substantially cut off by the ruling, and an adverse judgment necessarily results (as in *Miller* v. *Speight*, supra), this may be controlling. Erroneous rejection of a piece of evidence indispensable to the making out of any case at all by a plaintiff, or without which there can not possibly be a recovery, and the rejection of which, ipso facto, results in an adverse judgment, may stand on this basis. But the rejection of merely additional or cumulative, rebutting, or impeaching evidence will not do so.

Where a case is brought up, not as a whole, or after a motion

for a new trial, but by direct exception, assigning error in a particular ruling, the controlling character of that ruling must be made to appear. In very many long and hotly contested cases some errors are committed, in rulings on evidence, in certain expressions in the charge, or in like rulings in the progress of the trial; and yet, in the light of the whole case, they are corrected or explained, or do not furnish ground for reversal. The reports teem with such decisions. No longer ago than July 17th, in the case of *Allams* v. *State*, 123 *Ga.* 500, it was held that there was error in a certain charge, but in view of the whole case it did not necessitate a reversal. See also *Perry* v. *State*, 102 *Ga.* 365. All rulings are controlling on the identical point ruled, but this is not what is meant. It is when "the judgment, decree, or verdict has necessarily been controlled"—not possibly affected, but necessarily controlled, that reversal may be had in this mode. If every slip of the tongue, or every erroneous ruling made by a judge pending a trial, can be segregated from its surroundings and other parts of the case, without showing its controlling character, and a reversal can be had on account of it, regardless of whether the evidence may have demanded the verdict or judgment, it would amount at times almost to the trial judge passing on one case and this court on another. The present case emphasizes the rule. None of the evidence introduced on the trial is brought to this court, nor even the statement of the accused. Suppose the evidence had showed conclusively and without conflict that the defendant was caught *flagrante delicto*; or suppose that his own statement showed beyond question that he was guilty, of what avail would it be to direct a new trial because of some error which might not, and possibly could not, have affected the result? The supposition that the defendant's statement may be sufficient to warrant a conviction is not strained. Thus in *Wood* v. *State*, 119 *Ga.* 426, it was held that a verdict for assault with intent to murder was demanded by the defendant's own statement "without regard to any of the rulings of the court of which complaint was made." See also *Luby* v. *State*, 102 *Ga.* 633; *McKinley* v. *State*, 121 *Ga.* 192. In the absence of the evidence, it is not practicable in many cases for this court to determine whether an error complained of was such as to cause injury or not. If it be

suggested that the ruling in regard to the attorney tainted the whole trial, it may also be said that any error taints a trial to some degree; but to have a reversal by this mode of exception, it must be to a degree which necessarily controls.

There are two ways by which a case may reach this court. One is by the usual and ordinary methods of procedure. The other, for convenience, may be called the short form. It is stated in the second headnote. But to pursue this course successfully, it must be made to appear to this court that the judgment, decree, or verdict was necessarily controlled by such ruling or rulings, order, decision, or charge, and not merely that, standing alone, it or they may appear to be erroneous. It is not every error, but only necessarily controlling rulings, which may be segregated from the case, stripped from their surroundings, and brought to this court alone as successful grounds for a reversal. We are therefore of the opinion that, whether the court ruled correctly or not in regard to permitting the attorney to take part in the trial, in the absence of the evidence it can not be held that the ruling will require a reversal. Speaking for myself, it is not perfectly clear to me whether the result should be a judgment of affirmance or one of dismissal, but my brethren think the latter the more logical sequence. The practical result is the same.

*Writ of error dismissed.    All the Justices concur, except Simmons, C. J., absent, and*

COBB, J., dissenting. "A writ of error is an original writ, issuing out of chancery; and lies where a party is aggrieved by any error in the foundation, proceeding, judgment, or execution of a suit, in a court of record; and is in the nature of a commission to the judges of the same or a superior court, by which they are authorized to examine the record, upon which judgment was given, and on such examination to affirm or reverse the same, according to law." "A writ of error lies for some error or defect *in substance*, that is not aided, amendable, or cured at common law, or by some of the statutes of amendments or jeofails." 2 Tidd's Pr. 1134, 1136; 3 Bacon's Abr. 320 et seq.; 9 Vin. Abr. 474. Upon a writ of error only those matters are brought up which are properly a part of the record, or which are placed upon the record pursuant to the statute which provides for bills of exceptions. Errors of the court only can be corrected upon

writ of error. 2 Cyc. 512. An error of fact could not at common law be reviewed upon writ of error. 3 Bl. 406; Heard's Steph. Pl. 96, 118. Hence it followed that when an error of fact was complained of in a motion for new trial, a judgment refusing a new trial could not be reviewed upon writ of error. See, in this connection, Van Stone *v*. Stillwell Mfg. Co., 142 U. S. 128; Wilson *v*. Everett, 139 U. S. 616; Moore *v*. United States, 150 U. S. 57. Such was the origin, scope, and purpose of the writ of error under the common law. That provision of the constitution under which the Supreme Court of this State was organized provided that that court should sit "for the trial and determination of writs of error" from courts of a given class. Cobb's Dig. 1120. The language quoted is preserved in the present constitution. Civil Code, § 5835. In each of the constitutions of this State the Supreme Court has been limited in its jurisdiction as a court for the correction of errors, having no original jurisdiction. The writ of error had its origin in the common law, and became a part of the law of this State under the adopting statute, and is still effective in any case where it is appropriate as a remedy to be pursued, unless there has been a statute abolishing it or limiting it in its operation. The scope of the writ of error as indicated in the above quotations was recognized in *Allen* v. *Savannah*, 9 *Ga.* 286. See also *Tarver* v. *Rankin*, 3 *Ga.* 213; *Harris* v. *State*, 2 *Ga.* 211. In *Gaulden* v. *Shehee*, 20 *Ga.* 531, the constitutionality of the act declaring that the certificate of the judge to the bill of exceptions should be the writ of error was under consideration; and it was there held that it was competent for the legislature to provide that the power formerly exercised by the King of England through the chancery courts in issuing writs of error might be delegated by the State to the judges of the superior court. Prior to the date of the act just referred to, the writ of error was issued by the clerk of the Supreme Court in the name of the governor, bearing test in the name of the judges. See Rule 24, 1 *Ga.* XVII. See also *Harris* v. *State*, 2 *Ga.* 211. As said by Judge Lumpkin, the constitution could not have intended that the writ of error should be the common-law writ, because there was no court of chancery in Georgia to issue it, and therefore it was within the power of the General Assembly to regulate the issuance of this writ and pre-

·scribe by whom it should be issued. But neither in that decision, nor in any other to which my attention has been called, has it been held that the writ of error under the Georgia practice, in its scope and purpose, was anything less than the writ of error of the common law issued out of chancery. See, in this connection, *Harris* v. *State*, 2 *Ga.* 211. The jurisdiction of this court has been so extended as to authorize a writ of error to review a decision granting or refusing a new trial upon the facts, a proceeding that was unknown to the common law; that jurisdiction being upheld upon the broad language of the act establishing the court, which gave it jurisdiction to review any decision or judgment of the superior courts. This result was reached in the early history of this court by the application of a fiction, and has since been acquiesced in. See *Kelly* v. *Strouse*, 116 *Ga.* 887.

Under the common-law practice a reversal of the judgment under review was authorized upon a writ of error, whenever there appeared upon the record an error of law which was substantial in its nature, and by which the party complaining was or might have been prejudiced. A reversal would not result if the error was immaterial, and therefore not prejudicial; but upon the hearing of a writ of error, where exception had been taken to any decision on the question of law, it was not only the right of the party to demand a decision, but it was the duty of the court to determine whether the exception so taken was well founded. The court might hold, as it did in numerous cases, that the exception was without merit or was upon an immaterial point, but the court had no authority to refuse to consider the exception as made. At the time the Supreme Court of Georgia was established, and for more than a quarter of a century thereafter, the bench and the bar of the State were composed of men who were thoroughly conversant with the principles and practice of the common law, and the technical term of the common law used in the constitution was undoubtedly therein placed to be interpreted in its common-law sense, subject only to such limitations as might be found in the statutes of this State. I am well aware that a single physical precedent is worth little as authority. I am free to concede that several physical precedents of the same nature will not carry controlling weight. But when for twenty-five years and more there is an accumulation of physical prece-

dents which are in accord with common-law practice, and no criticism of any nature whatever upon these precedents is made by the bench or the bar, the former fully capable of detecting and criticising, and the latter not only capable of detecting, but perfectly willing to take advantage of any defects in practice that might exist, these precedents, even though they be merely physical, multiplied under such circumstances, piled one upon another, mountain high, command my respect and control me in my views. If I were tempted to entertain other views, reverence for the unquestioned learning of those who for so long a time passed these precedents unchallenged would constrain me to surrender them. The act of 1898 has been held by a unanimous decision of this court to be only declaratory of existing practice (*Taylor* v. *Reese*, 108 *Ga*. 379); and later cases conflicting with it are required under the statute, to yield to it. There can be no two opinions as to what was the common-law practice in reference to writs of error. Neither can there be any serious difference of opinion on the question as to whether this practice was recognized by the profession, both bench and bar of this State, for a long period of time. Treating this act as declaratory, a necessarily controlling decision under the act of 1898 would be a decision which was alleged to involve the commission of an error of law which was substantial in its nature. Such a decision was a necessarily controlling decision at common law, in the sense that a reversal upon writ of error would result, and such a decision is a necessarily controlling decision in Georgia. If the act of 1898 be interpreted as legislation introducing a new rule of practice having no reference to the past, it might be possible for the conclusion to be reached that the word "control" should be given the meaning that the decision under review must *constrain* a particular final judgment in the case. But in interpreting acts of the legislature in reference to matters of substantive law as well as of practice, it is neither right nor safe for the courts to shut their eyes to the history of the past in reference to the subject-matter of the legislation.

Usually it is with much hesitation that I place upon the records of this court an expression of my opinion when it is in conflict with that of a majority of the members of the court, and especially is this so when my views do not coincide with any of those

who are participating in the decision of the case. I am not now altogether freed from this hesitancy, but nevertheless it does seem clear to me that I am merely contending for the recognition of a rule of practice that was well settled at common law, and recognized by the concurrent voice of the bench and bar of Georgia when each was made up of lawyers thoroughly trained in the principles controlling the practice at common law. I am also sustained by the unanimous decision of this court, in the case of *Taylor* v. *Reese*, 108 *Ga.* 379, as I understand that decision. The views now expressed were authoritatively announced as the opinion of five Justices at the time the case of *Kelly* v. *Strouse*, 116 *Ga.* 872, was decided; and the identical question now involved was resolved, in the way it seems to me it ought to be resolved, by four Justices in *Cawthon* v. *State*, 119 *Ga.* 395. Among them was the present Chief Justice and Mr. Justice Turner, each trained for the bar at a time when a knowledge of common-law practice was deemed necessary to the successful practice of the profession, and Mr. Justice Lamar, who was himself the author of the act of 1898.

The assignment of error upon the refusal of the judge to prohibit the attorney to appear as counsel for the State should be considered by this court on its merits. It is not necessary for me, under the present status of the case, to intimate whether this assignment of error is meritorious, but it is before this court in due form, and is entitled to consideration and decision. What has been said, taken in connection with what is set forth in the majority opinion in the *Cawthon* case, fully expresses my views in reference to this matter. The views expressed are due to a settled conviction, reached after a laborious and anxious investigation when the *Cawthon* case was under consideration. If I could possibly view the question in any way where there was a doubt, I would gladly yield the doubt and let the practice be settled by an unanimous decision, notwithstanding what I have said on two former occasions. It is a matter of regret to me that my legal vision is so beclouded that I can not see as the truth that which seems so clear to my brethren. The scales may hereafter fall from my eyes, but until that time arrives I must adhere to the truth as it now appears to me.