TAYLOR *v.* REESE, Judge.　PERRY *v.* REESE, Judge.

1. If upon the trial of a criminal case, in a court whose judgments are directly reviewable by the Supreme Court, an error of law be committed the necessary effect of which is to control the verdict and thus deprive the accused of a fair and lawful trial, he may, without moving for a new trial, sue out a bill of exceptions for the purpose of having such error corrected.

2. When the refusal of a judge to certify a bill of exceptions tendered to him in a criminal case in which no motion for a new trial had been made was based solely upon the ground that, in his opinion, he had, in the absence of such a motion, no authority to certify the bill of exceptions, this court, without inquiring into the merits of the questions presented by the bill of exceptions, will by mandamus absolute command the judge to certify the same. The decisions of this court in *Pitts* v. *Hall*, 60 *Ga.* 389, and *Dotterer* v. *Harden*, 88 *Ga.* 145, in so far as they hold to the contrary, are, upon a review thereof, overruled.

Argued March 4, — Decided March 17, 1899.

Application for mandamus.

*Horace M. Holden* and *Alexander W. Stephens*, for movants.

LUMPKIN, P. J.   Upon an indictment charging Will Taylor and Fred Perry with the murder of Jep Dennard, they were jointly tried and convicted.   Without moving for a new trial, each by his counsel sued out a separate bill of exceptions alleging, among other things, that the judge erred in refusing to give in charge to the jury certain written requests, the object of which was to have the jury instructed upon the law of voluntary and involuntary manslaughter.   Each of these bills of exceptions set forth a statement of the evidence introduced at the trial; recited that the judge ruled that it was not proper to charge the jury as requested; and complained that the verdict of guilty was necessarily controlled by this ruling.   Each bill of exceptions also alleged that the judge failed entirely to charge concerning the lower grades of homicide.   Perry's bill of exceptions contained one assignment of error which was not in that of Taylor, but it is not now essential to state or discuss the same.   The judge declined to certify either of the bills of exceptions, basing his refusal upon the ground that, in the absence of a motion for a new trial, he had no authority so to do.   Thereupon, each of the accused sued out an application for mandamus to compel the judge to certify his bill of exceptions.   We have reached the conclusion that it was the duty of the judge to certify these bills of exceptions, notwithstanding there was in neither case a motion for a new trial.   The requests to charge were manifestly predicated upon the theory that, under the evidence and the statements made by the accused at the trial, the law of both grades

of manslaughter was involved. An examination of these bills of exceptions makes it perfectly clear that in suing them out the accused were seeking to avail themselves of the provisions of the act of. December 20, 1898, "to dispense with a motion for new trial and filing brief of the evidence, and to authorize a direct bill of exceptions, in certain cases," which declares: "That from and after the passage of this act, in any case now or hereafter brought, where the judgment, decree, or verdict has necessarily been controlled by one or more rulings, orders, decisions, or charges of the court, and the losing party desires to except to such judgment, decree, or verdict, and to assign error on the ruling, order, decision, or charge of the court, it shall not be necessary to make a motion for a new trial, nor file a brief of the evidence, but the party complaining shall be permitted to present a bill of exceptions containing only so much of the evidence or statement of facts as may be necessary to enable the Supreme Court to clearly understand the ruling, order, decision, or charge complained of." Acts of 1898, p. 92. This act renders unnecessary the filing of a motion for a new trial, when the case depends upon a controlling question of law and the complaint is that the trial judge committed a vital error with respect to the same. The losing party in any case might very properly concede that, under the evidence and a given charge, the verdict against him, assuming the charge to be correct, was demanded; yet, at the same time, he might with abundant reason insist that, because of error in the charge, the jury were constrained to find as they did. The correction by this court of such an error results in a new trial. The act of 1898 simply gives in explicit terms a right of which parties litigant frequently availed themselves before its passage. See, in this connection, *Roberts* v. *Neal*, 62 *Ga.* 163; *Trippe* v. *Wynne*, 76 *Ga.* 200; *Massengill* v. *First National Bank*, Ibid. 341, 347; *Haskins* v. *Bank of the State of Georgia*, 100 *Ga.* 216; *Haskins* v. *Throne, Franklin & Adams*, 101 *Ga.* 126. We do not, of course, wish to be understood as saying that a party can except to or complain of a verdict as being contrary to evidence without first moving for a new trial. *Jones* v. *Pitts*, 98 *Ga.* 521; *Holsey* v. *Porter*, 105 *Ga.* 837.

There is enough in each of the bills of exceptions tendered to the judge to enable this court to clearly understand and pass upon the rulings complained of; and if the positions taken by counsel for the accused are well founded, it was the right of the accused to have the jury determine the question whether or not they were guilty of a lower grade of homicide than murder. If the judge committed the errors alleged, they were deprived of this substantial right, and the verdicts actually rendered were necessarily .so far controlled by the judge's action as to necessitate a new trial. We do not, however, feel called upon, in dealing with these applications for mandamus, to pass upon the merits of these questions presented by the bills of exceptions. It is true that in the case of *Pitts* v. *Hall*, 60 *Ga.* 389, this court held that a trial judge should not be by mandamus compelled to sign a bill of exceptions which was without merit. And to the same effect, see *Dotterer* v. *Harden*, 88 *Ga.* 145, in which it was held that: "The Supreme Court will not grant a mandamus nisi to the end that a bill of exceptions may be signed and certified, where it affirmatively appears on the face of the application that the decision complained of and sought to be excepted to was correct, inasmuch as in such case the mandamus would be of no practical benefit to .the applicant. Following these rulings would require in every case like the present ones an examination by this court into the merits of the questions presented by the bill of exceptions tendered, and an ex parte decision thereon of the main case. The ruling in the case last cited was based mainly on that in the 60th *Ga.*, the correctness of which was conceded and therefore not brought under review. So far as relates to the question with which we are now dealing, neither of those decisions can, in our opinion, be regarded as sound. We have accordingly permitted counsel to review the same, and, to the extent indicated in the 2d headnote, they are overruled. The law makes it the imperative duty of a judge, whenever a true bill of exceptions is tendered to him, to certify it. Upon his refusal to sign and certify a bill of exceptions, it is the right of the party tendering the same to apply to this court for a mandamus nisi calling upon the judge to state the reasons for his

failure or refusal to certify. It then becomes the duty of this court to consider and determine the validity of these reasons; and if they be insufficient, the law explicitly declares that this court "shall issue a mandamus absolute, commanding the judge to sign and certify the bill of exceptions." See Civil Code, § 5546.

We have already shown that the reason given by Judge Reese for declining to certify the present bills of exceptions was insufficient. He could not, with propriety, have assigned as a reason for declining to certify that the bills of exceptions did not, in his opinion, show the commission of any error. If this were allowable, every judge could pursue a like course with reference to any bill of exceptions tendered to him, and the inevitable results of a practice of this kind would obviously be such as the law never contemplated. In point of fact, as has been seen, Judge Reese did not, in his answer to the mandamus nisi, allege such a reason for not certifying, and we are fully satisfied that no argument based upon the proposition that the rulings excepted to were correct should have any weight in determining whether or not the writs of mandamus should be made absolute. Conceding that it may finally be held that the rulings complained of were free from error, it is still the right of the applicants to have their cases brought to, heard in, and determined by this court in the regular and lawful way. It therefore becomes our duty to order in each case a writ of mandamus absolute. In view of what has just been said, we could not do so if the prior decisions of this court cited above were adhered to, without first inquiring into the merits of the questions presented by these bills of exceptions and reaching a conclusion that reversible error had been committed. In other words, we would have to decide the cases against the State without hearing from her counsel, and then, merely as matter of form, reverse the judgments when the cases subsequently reached here upon certified bills of exceptions. Such a practice would not only be anomalous, but, as a result thereof, it would frequently happen that cases of the utmost importance would, for all practical purposes, be finally determined before they reached this court in the manner pre-

scribed by law, and that, too, without even notice to parties vitally interested.

*Mandamus absolute ordered in each case.   All concurring.*