### 1715. SEABOARD AIR-LINE RAILWAY v. REID, Judge.

1. When there has been a final judgment in a case, civil or criminal, the losing party—other than the State in a criminal case—is entitled to one bill of exceptions as a matter of right; and if the trial judge refuses to sign and certify a timely bill of exceptions when presented to him, the reviewing court to which the writ of error would be returnable will grant mandamus nisi against the judge, irrespective of the merits of the exceptions presented. However, where there has already been one writ of error granted, and a second bill of exceptions is sought for the purpose of reviewing the action of the trial court upon an extraordinary motion for a new trial, or other similar procedure, and the

trial judge refuses to sign it, the reviewing court will not grant the mandamus nisi, if it appears from an inspection of the points presented that they are wholly unmeritorious.

2. Extraordinary new trials may be granted in this State in extraordinary cases, in the discretion of the court. The trial judge, however, properly declines to receive an application in a personal injury case, where the only effort is to bring new testimony to show that since the trial it has developed that the plaintiff's permanent injuries are not likely to be so severe as it then seemed they would be.

Application for mandamus.

Submitted March 1,—Decided March 23, 1909.

Miller sued the railway company for personal injuries (the cutting off of both of his legs), and recovered a verdict for $25,000. The railway company brought the case to this court, on the overruling of a motion for a new trial, and the judgment was affirmed. See *Seaboard Air-Line Railway* v. *Miller*, 5 *Ga. App.* 402 (63 S. E. 299). At the next term of the trial court after this court had rendered final judgment, the railway company presented to the trial judge an extraordinary motion for a new trial, based on the following ground: "That for the past two months, or thereabouts, before the filing of this motion, J. D. Miller Jr., plaintiff in the above-stated case, has been wearing cork legs; that it is a matter of general comment among said J. D. Miller Jr.'s friends and acquaintances as to how well he is getting along in the use of his cork legs." It is also alleged that the largeness of the verdict was due chiefly to the fact that Miller had testified on the trial of the case that he never would be able, on account of the nature of his injuries, to wear cork or artificial legs. Affidavits of reputable witnesses, substantiating the alleged newly discovered facts, as well as a copy of Miller's testimony on the former trial, were attached as exhibits to the motion. This being an extraordinary motion for a new trial, twenty-days notice was given to opposing counsel, in accordance with the statute. After examining the application, and hearing from both sides, the trial judge refused to grant the rule nisi. Thereupon, with the time prescribed by law, a bill of exceptions complaining of this ruling and judgment was presented to the judge, who declined to certify it, and the railway company has filed in this court an application for mandamus against the judge.

*Brown & Randolph*, for movant.

*Atkinson & Born*, contra.

POWELL, J. (After stating the foregoing facts.)

1. The rule now seems to be well settled in this State that after final judgment the losing party—other than the State in a criminal case—is entitled to one bill of exceptions as a matter of right; and if the judge refuses to sign and certify the bill of exceptions when presented to him, if it truly states the facts, an application for mandamus will be granted by the Supreme Court or the Court of Appeals, according as the writ of error is returnable to the one or the other, compelling the judge to sign and certify the bill of exceptions, irrespective of the merit of the exceptions taken. On the other hand, where the party has had one review by the higher court and a decision has been made against him, and he seeks to obtain from the judge of the court below a second bill of exceptions, the reviewing court will make a preliminary examination into the errors complained of, and will not grant the mandamus nisi unless the contentions of the applicant present such a show of merit as to raise a fairly debatable question as to their validity, that is to say, will not grant it if it clearly and unquestionably appears that if the judge should sign the bill of exceptions the judgment complained of would be affirmed. *Rawlins* v. *Mitchell,* 127 *Ga.* 24 (55 S. E. 958); *Harris* v. *Roan,* 119 *Ga.* 379 (46 S. E. 433); *Willis* v. *Felton,* 119 *Ga.* 634 (46 S. E. 837); *Taylor* v. *Reese,* 108 *Ga.* 379 (33 S. E. 917), and cases cited, it will be noted that Justice Cobb, who dissented in the case of *Willis* v. *Felton,* supra, afterwards, in the case of *Rawlins* v. *Mitchell,* supra, stated that he had become convinced that the majority of the court were correct in the *Willis* case.

2. Undoubtedly, in this State, as at common law, new trials may be granted upon extraordinary grounds, in the exercise of a sound discretion by the trial judge. It is plain, however, that he has a right to refuse to grant a rule nisi and thereby give a standing in court to such a motion, if he believes it to be wholly without merit. In other words, he does not grant the rule nisi as a matter of course. This appears from the fact that twenty-days notice is required to be given to the opposite party.

After examination of the grounds presented in the application for an extraordinary new trial, we are satisfied that the application is without merit. Doubtless it is true that the jury in giving large damages to the plaintiff were influenced by reason

of the fact that there was a probability that he would never be able to wear artificial limbs, and that he would be required to go among his fellow men on half legs. It is true that at the trial he showed his legs to the jury, and testified that, on account of the peculiar nature of the injuries, he could never wear successfully cork legs. The following excerpt from his testimony will clearly indicate how far he went in this respect: "Q. (by plaintiff's counsel) What about your ability to wear a cork leg on that leg (indicating the right leg)? A. When I bend my knee I have no knee joint there on this side. It hangs about that way (indicating). This leg has got good action in it (indicating left leg). I have got good action in the left leg, but none in the right. Q. What effect will that have upon your ability to stand and work on a cork leg? A. I can't hold out on a cork leg. I can't get the action in this one. When you have a cork leg and wear it every day, it will affect the support; the touch is tender, and that support there will always give me pain in my knee." In the nature of things, since this statement related to the future, and was accompanied by an exhibition of the legs themselves and a pointing out of the reasons upon which the statement was based, it amounted only to an expression of an opinion, or an inference from evidence before the jury. It may be fairly stated, therefore, that the plaintiff testified to an opinion that he would never be able to wear cork legs, and that the jury probably allowed a similar opinion or belief to influence them in the making up of their verdict. It now appears that Miller has been wearing cork legs, and that it is a matter of comment among his friends and acquaintances that he is getting along well in their use. A reasonable inference may therefore arise that another jury, with these new facts before them, might form an opinion that the plaintiff would be able to wear cork legs successfully, and might on that account give a smaller verdict; nevertheless, we are constrained to believe, with the trial judge, that this state of affairs affords no reason for entertaining an extraordinary motion for a new trial.

The assessing of damages for that which is to take place in the future must in nearly every case border on speculation. We dare say that there has hardly ever been a verdict rendered in this class of cases in which the belief of the jury was ultimately

vindicated, or in which their calculation of the damages was ever exactly verified by the events which followed. In the case of *Southern Ry. Co.* v. *Decker,* 5 *Ga. App.* 21 (62 S. E. 678), we referred to the fact that any effort on the part of the jury to fix the value of a man's life is the veriest speculation. Yet the law has not yet found a surer or safer means for settling this problematic question than to leave it to the honest belief of an intelligent jury. Once finally settled, the question must remain settled. Suppose we should grant a new trial in this very case, and that next time the jury, believing that the plaintiff would be able to wear cork legs, should reduce the amount of his damages to a sum considerably less than was found by the former jury, and subsequently it should develop that the opinion of this jury turned out to be incorrect, that as the plaintiff grew older and perhaps more fleshy, he was unable to sustain himself on artificial limbs; he would with equal face be entitled to demand still another trial, in order that the sum might be restored to that assessed by the first jury; and so on ad finitum. A very appropriate example is within the knowledge of the writer of this opinion. During the civil war his father lost a leg and for a few months was able to wear an artificial limb. In a short while, however, he began to take on flesh and found that he could not stand the pressure necessary upon the cork leg. It thereupon became necessary for him to discard it, and for the rest of his life he went on crutches. It is a matter of common knowledge that the fact that a person who has suffered an amputation is temporarily able to wear an artificial limb gives no positive assurance of the fact that he will be able to do so for any great length of time thereafter.

Verdicts of juries, based on probabilities as they appear at the trials, must stand, when approved at the time by the trial judge, unless they are set aside for some error of law, or unless it appear that they were the result of bias or prejudice or mistake. Sometimes the damages awarded are too little, sometimes too large. It ought to not be so, but it is so. It is but one of the defects in the system of trial by jury as to which legislative ingenuity has not yet found any efficacious or appropriate safeguard. If courts undertook to grant new trials whenever future events disclosed such a state of facts as to render it probable that the verdict of the jury was wrong, or whenever the spinal injury or the "trau-

matic neurasthenia" of the but-little-scarred victim of a railway accident showed marked improvement as a result of getting the company's check in settlement of the verdict, the courts would hardly find time to dispose of any new business, on account of retrials of matters supposed to have been finally disposed of. We have no doubt that there would be many instances of swift and sudden recurrence of traumatic neurasthenia and other like favorite diseases common to personal injury plaintiffs, if the courts should begin to grant new trials in such cases.

After a careful consideration of the matter, we are of the opinion that the trial judge properly refused to grant the extraordinary motion for a new trial; that the applicant's contention is plainly not meritorious; and, in accordance with the rule already discussed, we decline to grant the mandamus nisi. *Mandamus nisi refused.*