10349.　HARDISON v. GUERRY, judge.

1. "In passing upon an application for mandamus to compel a judge to certify a bill of exceptions which is presented in proper form, this court will not look into the merits of any assignment of error therein made; but mandamus will not lie to compel the trial judge to sign and certify a bill which is so defective in form as to necessitate a dismissal of the writ of error in case it should be certified and brought to this court." *Sistrunk* v. *Pendleton*, 129 *Ga.* 255 (58 S. E. 712).

(a) Where no sufficient assignment of error is contained in a bill of exceptions, the writ of error will be dismissed. *Fidelity & Deposit Co.* v. *Anderson*, 102 *Ga.* 551 (28 S. E. 382); *Kimball* v. *Williams*, 108 *Ga.* 812 (33 S. E. 994); *Peavy* v. *Atkinson*, 108 *Ga.* 167 (33 S. E. 956); *Wheeler* v. *Worley*, 110 *Ga.* 513 (35 S. E. 639); *Collins* v. *Carr*, 111 *Ga.* 867 (36 S. E. 959); *Carter* v. *Jackson*, 115 *Ga.* 676 (42 S. E. 46); *Patterson* v. *Beck*, 133 *Ga.* 701 (66 S. E. 911); *Willingham* v. *Cedartown Supply Co.*, 11 *Ga. App.* 464 (75 S. E. 823); *Joiner* v. *Stovall*, 12 *Ga. App.* 19 (76 S. E. 753).

2. "There are three exceptions to the general rule that this court will not consider the merits of the bill of exceptions upon the application for mandamus. One is where an extraordinary motion for a new trial has been made. Another is where all of the points made in the bill of exceptions have been passed upon by the appellate court, or where the bill of exceptions is so defective in form as to necessitate a dismissal of the writ of error should it be certified. And the third is in that class of cases in which the reviewing court is without jurisdiction. In the latter case, of course, a dismissal necessarily results. . . Barring these exceptions the appellate court, upon an application for mandamus, will not itself consider the merits of the bill of exceptions; though it will

decline to make the mandamus absolute if the judge in his answer presents a sufficient reason for not having certified the bill of exceptions." *Pelham Manufacturing Co.* v. *Scaife*, 7 *Ga. App.* 446 (67 S. E. 111).

3. Under these rulings and the facts of the instant case, if the bill of exceptions tendered to the judge should be certified and brought to this court, a dismissal of the. writ of error would result. This court therefore will not by mandamus compel the judge to certify the bill of exceptions.

                    DECIDED MARCH 1, 1919.

Application for mandamus.

*Robert W. Barnes,* for movant.

BROYLES, P. J. The petition for mandamus alleged: that on January 13, 1919, a bill of exceptions which was in due and legal form, and which was true and correct, was tendered to the trial judge; that three days later, on January 16, 1919, the judge returned to counsel for petitioner the bill of exceptions uncertified, together with the following written statement: "Being of the opinion, after consideration, that I have neither the legal authority or legal right to certify it, I hereby respectfully decline to do so. Dupont Guerry, J. C. C. M." The bill of exceptions, as set forth in the petition, was as follows:

"Georgia, Bibb County. R. G. Hardison, plaintiff in error, vs. The State of Georgia. In the Court of Appeals of Georgia, January, 1919. Error from city court of Macon. Accusation for violation of the prohibition law, and plea of guilty.

"(1) Be it remembered: That on the 11th day of January, 1919, the regular the December term, 1918, of the city court of Macon, before the Honorable Dupont Guerry, judge presiding, there came on to be heard the case of the State vs. R. G. Hardison, the same being an accusation charging the defendant with a violation of the prohibition laws of said State. .

"(2) The defendant waived arraignment and entered a plea of guilty to the accusation, whereupon the court imposed a sentence of eight (8) months imprisonment in the State Farm, four (4) months of which he might be relieved upon the payment of a fine of $200.00.

"(3) Judgment of the court was entered accordingly.

"(4) To this sentence and judgment of the court, the defendant excepted, and now excepts, and assigns error on the same, upon the ground that the same was contrary to law; was cruel and

unusual; was in violation of article 1, paragraph 9 of the constitution of Georgia, prohibiting cruel and unusual punishment; and upon the ground that the penalty attached to and provided in said law is contrary to law in that the same is cruel and unusual and in violation of article 1, paragraph 9 of the constitution of Georgia, prohibiting cruel and unusual punishments.

"(5) Plaintiff in error specifies as material to a clear understanding of the errors complained of the following portions of the record in said case, to wit:

"(1) Affidavit and accusation.

"(2) Plea of guilty.

"(3) Sentence and judgment of the court.

"And now comes the plaintiff in error, within the period allowed by law, and presents this his bill of exceptions, and prays that the same may be signed and certified, in order that the errors complained of may be considered and corrected. This 13th day of January, 1919."

The answer of the trial judge to the mandamus nisi was as follows:

"To the Honorable Court of Appeals of the State of Georgia.

"In answer to the order to show cause before the honorable court why I should not be required to sign and certify the bill of exceptions in the above-stated case, I most respectfully submit the following statement of facts and reasons, which I then believed and now believe legal and sufficient: The bill of exceptions was true in its recitations of fact, except the usual recitation in paragraph 4 of the bill of exception, that 'the defendant excepted,' the first and only exceptions being those contained in the bill of exceptions. The statement in paragraph 4 of the petition, that 'To this sentence and judgment of the court, your petitioner did then and there except and object to upon certain named grounds and reasons set forth in his bill of exceptions to the said sentence and judgment which was in due and legal form tendered to said court, the Hon. Dupont Guerry,' is denied.

"The plea of guilty was entered on January 11th to an accusation containing two counts for violations of the prohibition law, one for 'selling,' and the other for 'possession,' and the court thereupon asked Mr. Barnes, counsel for defendant, if he desired to say anything in reference to the sentence, and he responded in an

appeal for clemency, and was joined therein by the defendant and
two others, who said the defendant was a man of good character.
The court thereupon sentenced the defendant as set forth in the bill
of exceptions, and no question of constitutionality or other question
was raised or mentioned before the sentence was pronounced or
upon its being pronounced. An hour or more after that and on the
same day, January 11th, while the court was in recess, 'the defend-
ant being dissatisfied with the verdict (when there was no verdict)
and the judgment of the court,' tendered a motion for a new trial
(when there had been no trial) on the sole ground 'because the
judgment and sentence of the court is cruel and unusual punish-
ment and in violation of art. 1, par. 9, of the constitution of Geor-
gia, in that the sentence and judgment of the court is cruel and
unusual; and that the penalty attached to and provided in said law
which petitioner is charged with violating is cruel and unusual.'
A full copy of said motion is as follows: 'And now comes the
defendant in the above-stated case, through his attorney of record,
and, being dissatisfied with the verdict and the judgment of the
court, moves for a new trial, on the following grounds, to wit: (1)
Because the judgment and sentence of the court is a cruel and
unusual punishment and in violation of art. 1, par. 9 of the consti-
tution of Georgia, in that the said sentence and judgment of the
court is cruel and unusual, and that the penalty attached to and
provided in said law which petitioner is charged with violating is
cruel and unusual. Wherefore the defendant asks that these, his
grounds for a motion for a new trial, be inquired into, and prays a
new trial may be granted to him.' The court refused to recognize
the same on the ground that a motion for a new trial could not be
made in a case in which the defendant had pleaded guilty, and
because the ground alleged therein was not a ground for a new
trial.

"On January 13th the bill of exceptions was tendered as alleged,
and, after such consideration as was practicable (the court being
at the time engaged in court matters), I refused to sign and certify
the same on February [January ?] 16th, for the reason then given
in writing, as follows: 'Being of the opinion, after consideration,
that I have neither the legal authority or legal right to certify it,
I hereby respectfully decline to do so.' Upon such refusal the court
on the same day returned the bill to Mr. Barnes, notifying him of

such refusal. Eight days after this, on 24th of January, Mr. C. A. Glawson, attorney for the defendant, presented an application for a modification of the sentence, and the court, by written order, refused the same, for the reason that it regarded the sentence a moderate one and because the defendant had on the 21st of January been taken to the State Farm, where he was serving his sentence, and the court had no power to modify the same. Since then the defendant has filed an application for executive clemency with the prison commission, and I have been requested by the same to say whether there was any reason why the same should or should not be granted, and on the 3rd inst. I responded, giving reasons in the negative. So far as I am informed or believe, that application is still pending in the executive department of the State. For one offense under each count the defendant was punishable under the law by sentence to the State Farm or the chain-gang twelve months, by imprisonment in jail six months, and by fine one thousand dollars, so that for the two offenses he was punishable by twenty-four months to the State Farm or the chain-gang, twelve months in jail, and by fine two thousand dollars. He was sentenced to eight months, with the privilege of paying a fine of two hundred dollars and being thereupon relieved of four months. Should he pay the fine, it would be only one tenth of the full amount in which he was finable for the two offenses, and the remaining four months would be only one sixth of the time he could have been sentenced and he would suffer no jail imprisonment. If he should not pay the two hundred dollar fine, the eight months sentence to the State Farm would be only one third of the period for which he could have been sentenced for the two offenses and he would not pay any fine or suffer any jail imprisonment. When the difference in hardship and disgrace between State Farm sentence and a chain-gang sentence is considered, it may be safely said that his sentence is not more than one tenth of the full measure of punishment provided by law.

"Of course any defendant in any criminal proceeding in the city court of Macon may except to any sentence pronounced by that court, but, as I understand, he must except in accordance with law, and his exceptions must be to some decision made by the court below, and upon some question that the reviewing court has jurisdiction to review. With neither of these requirements did the bill of exceptions comply. The first assignment is that "the sentence is

contrary to law', and, in view of the contents of the bill of exceptions, this is of itself no assignment at all, because there is no distinct specification of a point on which error is assigned and no error is plainly and specifically set forth. It is not a case in which a general exception to a final judgment is sufficient because error is assigned on previous controlling rulings or on any rulings at all. General and vague exceptions make no issue of law that can be passed on by the reviewing court. Neither in this exception nor in any other exception in the bill is there any allegation that the court erred in any decision or ruling, or that the court made any decision or ruling.

"The second assignment is that the sentence was cruel and unusual. The sentence of the court shows that the punishment was neither cruel nor unusual, but quite to the contrary, and there is no specification as to how or why or wherein it is cruel and unusual. Giving the phrase used its constitutional signification, the very mild punishment imposed is clearly excluded therefrom. If, however, these views are incorrect, how can the honorable Court of Appeals pass upon whether the sentence is cruel and unusual or not? Upon what data could it act in declaring that the same is cruel and unusual? If the honorable court should decide that the punishment is cruel and unusual, how could the court decide to what extent the same is cruel and unusual? What could it do or direct to be done? What jurisdiction would it have to do anything or direct anything to be done?

"The third and fourth assignments are as follows: The sentence was in violation of art. 1, par. 9 of the constitution of Georgia prohibiting cruel and unusual punishments, and the penalty attached to and provided in said law is contrary to law, in that the same is cruel and unusual and in violation of art. 1, and par. 9 of the constitution of Georgia, prohibiting cruel and unusual punishments. These two assignments have the infirmities of their two predecessors, and other infirmities. The Supreme Court of Georgia holds that if the question of constitutionality is not made in the lower court, it will not be passed upon by the appellate court; also, that if the question of constitutionality of a statute is not presented in the lower court, it will not be considered by the Supreme Court. This honorable court has held that it will not certify a constitutional question to the Supreme Court unless raised in a

lower court. As has already been stated, no constitutional question was ever mentioned in the city court before or upon sentence. Before pleading guilty the defendant had opportunity to raise such question. If he could have raised it after plea and before, or upon sentence when orally pronounced or before it was reduced to writing and signed, he did neither. Afterwards, during the recess, he sought to raise such question by a motion for new trial and the court refused to recognize the same, as before stated, and the defendant two days afterwards tendered his bill of exceptions, in which he makes no exceptions to such refusal. Assuming that the exceptions in the bill of exceptions would be valid in a case in which they could be legally taken, they are legally impossible in the instant case, because there is nothing to which the defendant can legally except in a bill of exceptions. It may be said that the city court of Macon, in sentencing the defendant, decided by implication that the law under which the sentence was imposed was constitutional, but the defendant makes no assignment of error on such decision. If such decision by implication in a criminal case can be excepted to and the judge of the court below must certify the bill of exceptions and thereupon grant a supersedeas, the end of litigation in criminal cases would certainly be made more remote. The rule would apply to sentences in all criminal cases, from murder down to the most trivial misdemeanor, and upon verdicts as well as upon pleas of guilty. A fair and reasonable presumption is that the defendant is seeking a reduction of the punishment imposed, on account of its severity, but this court and the Supreme Court have both held that they have no jurisdiction to act on such a subject-matter by review. Such a question, it is manifest, appertains to the executive department, under the constitution.

"I assume the case will turn on the bill of exceptions I refused to certify, and not on allegations in the application which are denied. My view was that I had no authority to sign the bill of exceptions, because it was not a bill of exceptions, because it contained no exceptions and the recitations therein showed that there was no decision or ruling excepted to or that could be excepted to; and, separating (perhaps illogically) the question into two questions,— that of authority and that of right,—I believed I had no right to certify the bill of exceptions presented and cause it to be transmitted to the honorable court. The judge of the lower court can not

exercise any discretion either in certifying a bill of exceptions or in refusing to do so, and under my conviction as to the law it was my duty to the honorable court, as well as otherwise, to refuse. Most respectfully, Dupont Guerry, Judge of the City Court of Macon."

We think the answer of our learned brother of the trial bench, even when shorn of those paragraphs which may bear upon the merits of the assignments of error in the bill of exceptions, gives several sufficient reasons (and one is enough) why he should not be required to certify the bill of exceptions which was tendered him.

When properly construed the bill of exceptions contains but a single assignment of error,—in effect as follows: The judgment and sentence of the court, and the penalty attached to and provided in the prohibition law of the State, are contrary to law, in that the same are in violation of article 1, paragraph 9, of the constitution of Georgia, prohibiting cruel and unusual punishments. This exception attempts to raise a constitutional question. If the question were raised, this court would have no jurisdiction to entertain the bill of exceptions, but would transfer it to the Supreme Court. It is obvious, however, that no constitutional question is raised, and therefore, there being no other assignment of error, the bill of exceptions presents no question for determination by this court, and if it were certified and brought up, the writ of error would necessarily be dismissed. This ruling is not in conflict with the decision in *Taylor* v. *Reese,* 108 *Ga.* 379 (35 S. E. 917), and the other numerous decisions of the Supreme Court and of this court which hold that in passing upon a petition for mandamus the reviewing court will not consider the merits of the questions presented by the bill of exceptions. As was said by Mr. Justice Candler in *Willis* v. *Felton,* 119 *Ga.* 634 (46 S. E. 857) : "This case is, of course, clearly distinguishable from those where this court has held that it will, without enquiring into the merits of the case, issue a mandamus absolute to require a trial judge to certify the truth of a bill of exceptions complaining of *the overruling of a motion for a new trial or of any ruling which necessarily controlled the verdict of the jury.* It belongs rather to that class of cases where the merits of the questions sought to be reviewed have already been determined, and a further consideration of them would be futile." (Italics **ours.**) **Furthermore, we do not think that any of those decisions**

ever conceived of a bill of exceptions so wholly without even the shadow of a meritorious assignment of error as the one now under consideration. As was said by Mr. Justice Cobb in *Rawlins* v. *Mitchell,* 127 *Ga.* 24 (55 S. E. 958), in referring to the decision in *Taylor* v. *Reese,* supra: "While in the case just cited some very broad language is used by Mr. Presiding Justice Lumpkin in the opinion, the case that he was then dealing with must be kept in mind, and it was a case where the first bill of exceptions *after a trial and verdict* was tendered to the judge. It is worthy of remark, in passing, that it afterwards developed that the bill of exceptions presented a *meritorious* case, the judgment being reversed when the case was finally passed upon by this court. See *Taylor* v. *State,* 108 *Ga.* 384 [34 S. E. 2]. . . While no party will be deprived of a hearing on the merits of his case, no matter what may be its character, whether an extraordinary motion for a new trial, motion to set aside a judgment, or other proceeding after verdict, the judge of the superior court will not be compelled to certify a bill of exceptions in such proceeding unless it is made to appear to this court that the applicant has been denied some right guaranteed to him by law. . . But the case will not be prolonged by requiring the bill of exceptions to be certified, when it is apparent from the averments of the petition for mandamus and the bill of exceptions that an affirmance of the judgment complained of would in any event be the inevitable result. . . The ruling now made is in line with the view of the majority of the court in *Willis* v. *Felton* [supra]. The writer dissented in that case on the idea that the case of *Taylor* v. *Reese,* supra, was controlling; but upon further reflection and investigation he is of the opinion that that case did not go to the extent then contended for, and he is therefore prepared to concur in the view above set forth." (Italics ours.) In the same case (*Rawlins* v. *Mitchell*), in a concurring opinion, Justices Evans, Lumpkin, and Atkinson said: "We concur in the ruling in this case, and the result reached. We think, however, that, while generally a first bill of exceptions which is true and duly prepared and presented in accordance with law, and which assigns error on a final judgment, should be signed, yet it is not an arbitrary and invariable rule that this court will by mandamus compel the signing even of a first bill of exceptions, wholly regardless of what it contains."

It has often been said by law-writers, and quoted approvingly in numerous decisions of both of the reviewing courts of this State, that "the law does not require the doing of a vain thing." The bill of exceptions in the present case is upon its face so absolutely and utterly devoid of any merit whatsoever that to require it to be certified and brought to this court would be merely a waste of time and "an idle and useless ceremony".

*Mandamus absolute denied. Bloodworth, J., concurs. Stephens, J., dissents.*

STEPHENS, J., dissenting. "Either party in any civil cause, and the defendant in any criminal proceeding, . . may except to any *sentence,* judgment, or decision. . . Such bill of exceptions shall specify plainly the decision complained of, and the alleged error." (Italics mine.) Civil Code, § 6139.

If the bill of exceptions be true, and contain a valid assignment of error presenting a question within the jurisdiction of this court, and does not fall within the exceptions mentioned in *Pelham Mfg. Co.* v. *Scaife,* cited and referred to in headnote 2, and being the first bill of exceptions presented to the trial judge after the rendition of the judgment or sentence complained of, the trial judge should by mandamus absolute be ordered to certify to the bill of exceptions, in order that the merits of the questions presented in the valid assignment of error may be determined by this court in the manner regularly provided by law.

The bill of exceptions before us assigns error upon the sentence upon the ground that it "was contrary to law, was cruel and unusual; was in violation of article 1, paragraph 9, of the constitution of Georgia, prohibiting cruel and unusual punishment." Whatever may be the merits of the question here raised, the assignment of error is good and presents a question for determination. It is well settled that this court will entertain a direct bill of exceptions to a final judgment even though no objection was made to its rendition in the court below. *Epping* v. *Columbus,* 117 *Ga.* 264 (10) (43 S. E. 803) ; *Kelly* v. *Strouse,* 116 *Ga.* 874 (8 *c*) (43 S. E. 280) ; *Wyly* v. *Burnett,* 43 *Ga.* 438 (2).

The constitutional amendment of 1916 fixing the jurisdiction of this court provides that the Court of Appeals shall have certain jurisdiction except in "cases that involve the construction of the Constitution of the State of Georgia or of the United States, or

treaties between the United States and foreign governments; [and] . . cases in which the constitutionality of any law of the State of Georgia or of the United States is drawn in question." So far as this assignment of error is concerned, the applicant does not seek to raise any question as to the constitutionality of any law of the State of Georgia or of the United States, nor does he raise a question that involves the construction of the constitution of this State in the sense in which the expression "construction of the constitution" is here used. Under the constitutional amendment of 1906 creating the Court of Appeals, which was in this respect substantially the same as the above-quoted language from the amendment of 1916 now fixing the jurisdiction of this court, this provision was construed by this court in the case of *Fews* v. *State,* 1 *Ga. App.* 122 (58 S. E. 64), where the following language was used by Judge Powell: "The constitutional amendment creating this court provides, that 'Where, in a case pending in the Court of Appeals, a question is raised as to the construction of a provision of the constitution of this State or of the United States, or as to the constitutionality of an act of the General Assembly of this State, and a decision of the question is necessary to the determination of the case, the Court of Appeals shall so certify to the Supreme Court, and thereupon a transcript of the record shall be transmitted to the Supreme Court, which, after having afforded to the parties an opportunity to be heard thereon, shall instruct the Court of Appeals on the question so certified, and the Court of Appeals shall be bound by the instruction so given.' Acts 1906, p. 26. It will be seen from the above that, since the question presented in this case does not involve the constitutionality of an act of the General Assembly, it must appear that it raises a question as to the *construction* of a provision of the constitution, before this court is required to certify it to the Supreme Court. A case that involves merely the applicability of a concededly unambiguous clause of the constitution to a given state of facts raises no question of construction. Likewise, where a clause in the constitution has been construed by the Supreme Court as having a certain meaning and intendment, and such fixed judicial construction is unchallenged, there is still no question raised as to the construction of a clause of the constitution. The excerpt from the constitutional amendment creating this court, quoted above, is also to be construed in pari

materia with another provision in the same law, that 'The decis-
ions of the Supreme Court shall bind the Court of Appeals as precedents.' Therefore, if the identical question of construction has
been before the Supreme Court, and that court has judicially given
a construction to the clause in question, it is unnecessary to certify
and to continue to certify such a question to the Supreme Court
every time a party may seek to raise it." See *Cox* v. *State,* 19 *Ga.
App.* 289 (91 S. E. 422) ; *Atkins* v. *State,* 7 *Ga. App.* 202 (66 S.
E. 479) ; *Tilton* v. *State,* 5 *Ga. App.* 60 (62 S. E. 651).

The section of the constitution of this State which the applicant,
in his assignment of error, refers to has been construed by the
Supreme Court of Georgia as being a limitation upon legislative
authority. See *Whitten* v. *State,* 47 *Ga.* 301; *Plain.* v. *State,* 60
*Ga.* 284; *Loeb* v. *Jennings,* 133 *Ga.* 796 (67 S. E. 101, 18 Ann.
Cas. 376) ; *Allen* v. *Jennings,* 134 *Ga.* 338 (67 S. E. 883). As this
clause of the constitution has "been construed by the Supreme
Court as having a certain meaning and intendment, and such fixed
judicial construction is unchallenged, [and as] there is still no
question raised as to the construction of a clause of the constitu-
tion," a question is presented in the bill of exceptions for determi-
nation by this court. That this court would be compelled, upon
an inquiry into the merits of the question presented by this assign-
ment of error, to decide against the applicant's contention does not
affect his right, under the repeated rulings of the Supreme Court
and of this court, to have his bill of exceptions certified and the case
brought regularly to this court, where the question can be decided
upon the bill of exceptions after a hearing, rather than upon an
application for mandamus without an opportunity to be heard.

The cases of *Willis* v. *Felton,* 119 *Ga.* 634 (46 S. E. 857), and
*Rawlins* v. *Mitchell,* 127 *Ga.* 24 (55 S. E. 958), relied upon in the
majority opinion, relate to a bill of exceptions presented to the
trial judge after the case had already been once reviewed in the
appellate court upon a former bill of exceptions. Such cases have
always been regarded as exceptions to the general rule requiring a
mandamus to compel the trial judge to certify to a first bill of
exceptions when it speaks the truth and contains a valid assignment
of error. The question seems to me to be settled by *Taylor* v. *Reese,*
108 *Ga.* 379 (33 S. E. 917), where it was held that upon a pre-
sentation to the trial judge of a first bill of exceptions, which was

true and contained a valid assignment of error, the court, without inquiring into the merits of the question presented by the bill of exceptions, would by mandamus absolute compel the trial judge to certify the same. This case has never been overruled. It was commented on by the Supreme Court in the opinion rendered by Mr. Justice Cobb in *Rawlins* v. *Mitchell,* supra. Justice Cobb there said, "When a case has been tried in the superior court and a verdict rendered therein, the losing party is entitled to make a motion for a new trial, and to bring to this court for review the decision of the judge overruling the motion. . . . When a bill of exceptions, in such cases, is tendered to the judge, and the averments therein are true, it is the duty of the judge to certify the same, in order that the case may be brought to this court, according to the usual practice governing such matters. When in such a case the judge refuses to certify the bill of exceptions, and an application for mandamus is made to this court to compel him to certify the same, the only question that will be determined on such application is whether the bill of exceptions is in due form and it is shown by the petition for mandamus that the averments therein are true. The merits of the assignments of error therein will not be dealt with. In such cases it is immaterial whether the assignments of error are meritorious. The case must reach the Supreme Court in the ordinary way. . . It will be seen that there are two classes of cases relating to the duty and authority of this court upon an application for a mandamus to compel the judge to certify to a bill of exceptions. If it is the first bill of exceptions after verdict, the merits of the case will not be considered upon the application for mandamus. . The case now under consideration is not a case of the first bill of exceptions after verdict. . . But it is to a ruling relating to a motion to set aside a judgment made after the term at which the judgment was rendered, but within three years from the date of the judgment. Shall a case of this character be classed with those which are embraced in the rule in *Taylor* v. *Reese,* supra, or shall it be classed with those embraced in the rule laid down in *Malone* v. *Hopkins* [49 *Ga.* 221] and the numerous cases following it? The reason at the foundation of the latter class of cases is undoubtedly that there must be a termination of a criminal case; and while no party will be deprived of a hearing on the merits of his case, no matter what may be its character, whether an extraordinary

motion for new trial, motion to set aside a judgment, or other pro-
ceeding after verdict, the judge of the superior court will not be
compelled to certify a bill of exceptions in such proceeding unless it
is made to appear to this court that the applicant has been denied
some right guaranteed to him by law." *Malone* v. *Hopkins* was a
case where the trial judge refused to certify to a bill of exceptions
complaining of a ruling upon an extraordinary motion for new trial.
When brought to the Supreme Court upon application for manda-
mus a mandamus was refused. In the case of *Rawlins* v. *Mitchell,*
supra, just quoted from, three of the Justices, while concurring,
stated obiter that in their opinion "it is not an arbitrary and inva-
riable rule that this court will by mandamus compel the signing
even of a first bill of exceptions." Be that as it may, the doctrine
of *Taylor* v. *Reese,* as above stated, has not been overruled. In my
opinion the doctrine there laid down controls the case now before
us.

Whether or not there appears to be any merit in the questions
raised in the bill of exceptions exhibited to us in this case, I do
not think that we should close the door of this court in the face of
the applicant and deny to him the privilege of at least one hearing
on the merits of the questions presented in his bill of exceptions,
after a proper certification thereof and upon its being regularly sub-
mitted to this court. The doors of courts are supposed to be open,
not barred.

Even though, under the law as at present announced, the con-
tention of the applicant may not be meritorious, he unquestionably
has the right to a hearing wherein he can seek to have overruled
the decisions which confront him. The latter can be accomplished
only upon a review on a bill of exceptions regularly bringing the
case up. It cannot be done on an application for a mandamus to
compel the signing of the bill of exceptions.

While it would be a great relief of this court could we refuse to
grant a mandamus absolute in any case where the questions raised
in the bill of exceptions were palpably without merit, yet under the
liberal practice obtaining in this State, allowing resort to this
court as a matter of right to every litigant cast in the court below,
it would seem that we should not refuse, except in extraordinary
cases, to allow a losing party, upon his first complaint of a decision
of the court below, the right to regularly come to this court and

have his case here once reviewed. Such relief should be granted by legislation, rather than by a refusal on our part to issue a mandamus for the purpose of having certified a bill of exceptions which presents no meritorious question for our review.

For the above reasons I feel constrained to hold that a mandamus absolute should be granted, and therefore must dissent from the judgment denying it.